IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, et al., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF FISH & GAME, et al., <br><br> Defendants. | No. C 06-06685 CRB <br><br> **MEMORANDUM AND ORDER** |

Now pending before the Court is defendants' motion for summary judgment. After carefully considering the parties' papers and evidence, the Court concludes that oral argument is unnecessary and DENIES in part and CONTINUES in part defendants' motion.

**ALLEGATIONS OF THE COMPLAINT**

The Schellinger defendants ("Schellinger") propose to develop approximately 21 acres of land in Sebastopol, California (the "Site"). First Amended Complaint ("FAC") ¶ 21. The Site is comprised of grasslands containing seasonal vernal pools, wetlands, seasonal creeks, vernal pools and vernal swales. Approximately two thirds of the Site consists "of jurisdictional wetlands due to its adjacency to navigable in fact waters of the United States." Id. ¶ 22. An endangered plant, the Sebastopol meadowfoam, is located at the Site. Schellinger "solicited or otherwise assisted in the removal and reduction to possession;"

1  "maliciously damaged or destroyed; or "removed, cut, dug up, damaged or destroyed" the
2  Sebastopol meadowfoam from the Site. Id. ¶¶ 24-25, 33.  Schellinger has also engaged in
3  activities that have threatened or harmed the endangered Tiger salamander. Id. ¶¶ 26, 33.

4  State Defendants Carl Wilcox, Gene Cooley, and Robert Floerke, in their capacity as
5  employees of the California Department of Fish and Game "engaged in the removal and
6  reduction to possession, maliciously damaged or destroyed, or removed, cut, dug up,
7  damaged or destroyed the Sebastopol meadowfoam from the Site. Id. ¶ 35.  The State
8  Defendants asserted that the Sebastopol meadowfoam was not naturally occurring on the Site
9  and had been intentionally planted there. Id. ¶ 38.

## PROCEDURAL HISTORY

Plaintiff environmental group and individuals filed this action against the State Defendants and Schellinger under section 9 of the federal Endangered Species Act ("ESA"). Plaintiffs allege that defendants' conduct harmed the endangered Sebastopol meadowfoam and Tiger salamander.  At a case management conference on March 2, 2007, the Court set a December trial date and scheduled a summary judgment hearing for October 12, 2007.

Defendants have moved for an early summary judgment ruling.  They contend that their conduct did not violate the ESA as a matter of law as to the Sebastopol meadowfoam. First, they argue that the meadowfoam were on private land and therefore the Act does not apply.  Second, they argue that no claim can be stated against them because the State Defendants removed the meadowfoam as part of their official management and law enforcement duties in accordance with California law.

## SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (here, the defendants) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not

have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## DISCUSSION

Section 9(a)(2)(B) of the ESA applies to plants and makes it unlawful for any person to

> remove and reduce to possession any such species from areas under Federal jurisdiction; maliciously damage or destroy any such species on any such area; or remove, cut, dig up, or damage or destroy any such species on any other area in knowing violation of any law or regulation of any State.

16 U.S.C. § 1538(a)(2)(B). Thus, the prohibition on removing and reducing to possession and maliciously damaging or destroying applies only to plant species in areas "under Federal jurisdiction." A person may not "remove, cut, dig up, or damage or destroy" endangered plant species on any other land, that is, land not under Federal jurisdiction, provided it was done in knowing violation of state law. Defendants move for summary judgment on the ground that this action does not involve lands "under Federal jurisdiction" and plaintiffs cannot prove a knowing violation of state law.

### A.     Under Federal jurisdiction

Defendants first argue that "under Federal jurisdiction" means federal property; that is, that the Act only applies to plants on land owned by the federal government. Since it is undisputed that the Site is privately owned, defendants contend that the Act does not apply as a matter of law unless plaintiffs can prove a knowing violation of state law.

3

The Court disagrees with defendants' limited reading of "under Federal Jurisdiction." Defendants contend that no court has held that "under Federal Jurisdiction" means what it says, that is, lands under the jurisdiction of the federal government. But neither has any court held that "under Federal jurisdiction" actually means "under Federal ownership." In Defenders of Wildlife v. United States Envtl. Prot. Agency, 420 F.3d 946, 975 (9th Cir. 2004), the court cited the "Federal jurisdiction" language when using the term "federal lands." Nothing in that opinion suggests that "federal lands" means only lands owned by the federal government rather than, as the statute unambiguously states, lands under the jurisdiction of the federal government. Moreover, in Oregon Natural Resources Council v. Turner, 863 F.Supp.1277 (D. Or. 1994), a case cited by defendants, the court implied that "Federal jurisdiction" in section 9(a)(2)(B) is broader than mere federal ownership; it stated, in effect, that "under Federal jurisdiction" means lands that enter into interstate or foreign commerce or require any federal authorization. Id. at 1284 (citing ESA Section 9(a)(2)(B)).

As defendants' motion is based exclusively on its argument that the Site is not owned by the federal government, this part of their motion is DENIED. Defendants have not met their burden of proving as a matter of law that the Site does not contain any lands under "Federal jurisdiction."

### B. Knowing violation of state law

Defendants also argue that no reasonable juror could find that they (or more precisely, the State Defendants) engaged in a knowing violation of state law. In particular, they contend that state law provides that "[t]he possession or take of endangered, threatened, or candidate species by employees and agent of the Department [of Fish and Game] for scientific, educational and management purposes, and for law enforcement purposes, is not prohibited." Cal. Code Regs. tit. 14, § 783.1(c). Defendants rely on two letters from the State Defendants to prove that they removed the meadowfoam for "management purposes;" namely, that they believed that the plants had not naturally grown there but instead had been transplanted.

4

Plaintiffs respond that they have not been given the opportunity to test defendants' evidence. They contend that the State Defendants' assertion that the meadowfoam had been transplanted is wrong, and, importantly, that the State Defendants knew it was wrong. While plaintiffs may or may not be able to prove their assertion, they should be given the opportunity to conduct discovery on defendants' defense. Accordingly, the Court will DENY without prejudice defendants' motion for summary judgment. Defendants may renew the motion for hearing on October 12, 2007.

**IT IS SO ORDERED.**

Dated: May 14, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\6685\ordersummaryjudgment15wpd